Jaryl L. Rencher (4903)
Benjamin K. Lusty (12159)
**RENCHER ANJEWIERDEN**
460 South 400 East
Salt Lake City, Utah 84111
Telephone: (801) 961-1300
Fax: (801) 961-1311
ben@lawfirmra.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SECURITY AMERICA RISK RETENTION GROUP, INC., a Vermont Corporation<br><br>Plaintiff,<br><br>v. | **THIRD AMENDED COMPLAINT FOR DECLARATORY RELIEF** |

1

| | |
|---|---|
| ALDER HOLDINGS, LLC, a Utah Limited Liability Company; ALARM PROTECTION TECHNOLOGY, LLC, a Domestic Limited Liability Company; ALARM PROTECTION TECHNOLOGY ALASKA, LLC, a Domestic Limited Liability Company; ALARM PROTECTION ALASKA, LLC, a Utah Limited Liability Company; ALARM PROTECTION, LLC, a Utah Limited Liability Company; ALARM PROTECTION ALABAMA, a Utah Limited Liability Company; ALARM PROTECTION ARKANSAS, LLC, a Utah limited liability company; ALARM PROTECTION CALIFORNIA, LLC, a Utah limited liability Company; ALARM PROTECTION FLORIDA, LLC, a Utah limited liability company; ALARAM PROTECTION KENTUCKY, LLC, a Utah limited liability company; ALARAM PROTECTION MISSISSIPPI, LLC, a Utah limited liability company; ALARM PROTECTION TENNESSEE, LLC, a Utah limited liability company; ALARM PROTECTION TEXAS, LLC, a Utah limited liability company; ALARM PROTECTION UTAH, LLC, a Utah Limited liability company; ADAM SCHANZ,  an individual and DOES I-X.<br><br>        Defendants. | Case No.2:17-cv-00886-RJS-EJF<br><br>Judge Shelby |

Plaintiff Security America Risk Retention Group, Inc. ("Security America," "SARRG," or "Plaintiff"), by and through its undersigned counsel of record complains against Defendants as follows:

2

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a corporation duly organized under the laws of the State of Vermont, registered to transact business in the State of Utah, and authorized to conduct an insurance business in the State of Utah. Plaintiff's principal place of business is in the State of Vermont.

2. Defendant Alder Holdings, LLC ("Alder") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

3. Defendant Alarm Protection Technology, LLC ("APT") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

4. Defendant Alarm Protection Technology Alaska, LLC ("APT Alaska") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with

their principal places of business in Utah.

5. Defendant Alarm Protection Alaska, LLC ("Alarm Alaska") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

6. Defendant Alarm Protection, LLC ("Alarm Protection") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

7. Defendant Alarm Protection Alabama, LLC ("Alarm Alabama") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

8. Defendant Alarm Protection Arkansas, LLC ("Alarm Arkansas") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and

belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

9.      Defendant Alarm Protection California, LLC ("Alarm California") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

10.     Defendant Alarm Protection Florida, LLC ("Alarm Florida") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

11.     Defendant Alarm Protection Kentucky, LLC ("Alarm Kentucky") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with

their principal places of business in Utah.

12.     Defendant Alarm Protection Mississippi, LLC (Alarm Mississippi) is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

13.     Defendant Alarm Protection Tennessee, LLC ("Alarm Tennessee") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

14.     Defendant Alarm Protection Texas, LLC ("Alarm Texas") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

15.     Defendant Alarm Protection Utah, LLC ("Alarm Utah") is a Utah Limited Liability Company with its principal place of business in the State of Utah. On information and belief, its

headquarters are in Orem, Utah, but it maintains offices and services in Salt Lake County. On information and belief, all members of this Defendant are either domiciled in Utah and thus citizens of Utah, or corporate entities organized under the laws of the State of Utah with their principal places of business in Utah.

16. Defendant Adam Schanz is, on information and belief, a resident of Utah County and the beneficial owner of all of the aforementioned Defendant entities. Defendant Schanz is domiciled in Utah and a citizen of the State of Utah.

17. On information and belief, Defendants are affiliated entities, controlled by Adam Schanz.

18. On information and belief, Defendants maintain offices, conduct sales, employ agents, and otherwise conduct and transact business in Salt Lake County, State of Utah.

19. This Court has jurisdiction to enter an order granting declaratory relief pursuant to 28 U.S.C. §2201.

20. This Court has original jurisdiction pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

21. Venus is appropriate in this jurisdiction because the defendants are all registered to do business and organized as Utah entities and have principal places of business in the state of Utah.

## GENERAL ALLEGATIONS

22. Plaintiff restates by this reference all preceding paragraphs.

*The SARRG Policies*

23. Plaintiff issued to APT a Commercial General and Professional Liability policy to APT (Policy Number 010411112 ("the 2011 Policy") and Policy Number 010411213 ("the 2012

policy")). The 2011 Policy has a policy period of January 15, 2011 through January 15, 2012. The 2012 Policy has a policy period of January 15, 2012 through January 15, 2013.

24. Both the 2011 policy and the 2012 policy are subject to the same policy form as contained in the Commercial General Liability Coverage Form. The 2011 Policy and the 2012 Policy shall be collectively referred to as the "Insurance Policies."

25. Similar policies were issued with similar coverage dates through 2015.

26. The Insurance Policies provide for three separate types of coverages in the main policy, and a fourth type of coverage in an amendatory endorsement. Coverage A applies to Bodily Injury and Property Damage Liability. Coverage C applies to certain Medical Payments. Coverage B applies to Personal and Advertising Injury Liability. Coverage D applies to Professional Liability.

*Terms and exclusions for Coverage B, Personal and Advertising Injury*

27. With respect to Coverage B, Personal and Advertising Injury Liability, the Insurance Policies provide an Insuring Agreement which reads as follows:

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim of "suit" that may result. But:

      (1) The amount we will pay for damage is limited as described in Section **III**—Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used the applicable limits of insurance in the payment of judgments or settlements under Coverages **A** or **B**

8

    or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for Under Supplementary Payments—Coverages **A** and **B**.

  b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

28. The term "Personal and Advertising Injury" is defined in the Insurance Policies. The Insurance Policies provide as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offense:

 a. False arrest, detention or imprisonment;
 b. Malicious prosecution;
 c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
 d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, product or services;
 e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
 f. The use of another's advertising idea in your "advertisement"; or
 g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

29. The Insuring Agreement for Coverage B, however, is subject to various Exclusions, terms, and conditions. With respect to Exclusions, the Insurance Polices provide the following exclusions, relevant to this matter:

**2. Exclusions**
This insurance does not apply to:

 **a.** **Knowing Violation Of Rights of Another**

9

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published with Knowledge of Falsity**
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior to Policy Period**
"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another another's advertising idea in your "advertisement".

i. **Infringement of Copyright, Patent, Trademark Or Trade Secret**
"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

l. **Unauthorized use of Another's Name or Product**
"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

30. The Insuring Agreement for Coverage B is likewise subject to the general terms and

conditions of the Insurance Policies, including **SECTION II—WHO IS AN INSURED**,

**SECTION III—LIMITS OF INSURANCE**, and **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**, including the Definitions provided in the Insurance Policies.

*Terms and Conditions for Coverage D, Professional Liability*

31. The Insurance Policies include an Amendatory Endorsement, "ADDITION OF PROFESSIONAL LIABILITY COVERAGE AND AMENDMENT OF LIMITS OF INSURANCE."

32. With respect to Coverage D, Professional Liability, the Insurance Policies provide for an Insuring Agreement as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of negligent acts, errors, or omissions arising out of "professional services" rendered for others by the insured. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for such negligent acts, errors and omissions to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

> (1) the amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B, or D or medical expenses under Coverage C.

33. The term "Professional Services" is defined in the Insurance policies to mean "professional services rendered in the business of selling, installing, maintaining, monitoring or providing connection services for: 1. Services as noted on the application for this policy on file with the insurer."

11

34. The applications for insurance generally described the relevant professional services as "sales, service, installation of alarm systems."

35. The Insuring Agreement for Coverage D, however, is subject to various Exclusions, terms, and conditions. With respect to Exclusions, the Insurance Polices provide the following exclusions, relevant to this matter:

  2. Exclusions

  This endorsement does not provide coverage and the company will not pay claim expenses or damages for:

    a. Any claim arising from any dishonest, fraudulent, criminal, intentional or malicious act, error or omission, or those of a knowingly wrongful nature committed intentionally by or at the direction of any insured;

    b. Any claim based upon or arising out of any alleged negligent act, error, omission or circumstance likely to give rise to a claim that an insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior claim or possible claim or circumstance referenced in the Named Insured's application;

    c. Any claim based upon or arising out of a violation or alleged violation of any antitrust, price fixing or restraint law or any infringement of copyright, patent, trademark, service mark or trade name;

    i. Any claim made by any insured against any other insured;

    j. Any claim based upon or arising out of an express warranty or guarantee;

    k. Punitive or exemplary damages, any damages which are a multiple of Compensatory damages, or fines or penalties;

    l. Any claim based upon or arising out of any insured's involvement in or "professional services" rendered to or on behalf of any business enterprise and/or any subsidiary of such business enterprise, not named in the Declarations, that wholly or partly owns the insured or which to any extent controls, operates or manages the insured, or that is wholly or partly owned by an insured on in which an insured ins an officer, partner or employee, or which is to any extent controlled, operated or managed by an

insured;

*Other relevant terms*

36. The Insurance Policies include an Amendatory Endorsement titled "**PUNITIVE DAMAGES EXCLUSION**." The terms of this endorsement state: "In consideration for the premium charged for this policy, it is understood and agreed that this policy does not apply to Punitive or Exemplary damages awarded against the insured."

*The Vivint Litigation*

37. On or about June 4, 2014, Vivint, Inc. ("Vivint") filed suit against several Defendants in the Fourth Judicial District Court, Utah County, State of Utah that was later removed to the United States District Court for the District of Utah. That suit was captioned *Vivint v. Alarm Protection, et. Al.*, Case No. 2:14-cv-00441.[1] This litigation shall be referred to herein as the "Vivint Litigation." The defendants in the Vivint Litigation shall be referred to as the "Vivint Defendants."

38. According to the relevant complaint, Vivint is a Utah corporation engaged in the business of providing electronic security and home automation products and services to customers throughout the United States, Canada and New Zealand.

39. The Vivint Complaint alleges eight causes of action against the Vivint Defendants. These are 1) Intentional Interference with Contract-Customer Contracts; 2) Intentional Interference with Contract-The Employment Agreements; 3) Deceptive Trade Practices under Utah Code

---

[1] The individual defendants included in the Vivint Litigation are Alarm Protection, Alarm Alabama, Alarm Alaska, Alarm Arkansas, Alarm California, Alarm Florida, Alarm Kentucky, Alarm Mississippi, Alarm Tennessee, Alarm Texas, Alarm Utah, and Adam Schanz.

Ann. §13-11a-1 *et. seq.*; 4) Unfair Competition under the Lanham Act, 15 U.S.C. §1125(a); 5) Unfair Competition-Utah Common Law; 6) Trade Slander/Defamation; 7) Civil Conspiracy; 8) Injunctive Relief.

40. The Vivint Litigation arose out of various sales techniques and tactics of Defendants.

41. As alleged in the Vivint Litigation, the Vivint Defendants improperly persuaded former Vivint employees and sales representatives, in violation of those employees and sales representatives' agreements with Vivint, to breach certain non-solicitation agreements and induce customers of Vivint to "switch" or change their alarm security services contracts to Vivint Defendants.

42. Indeed, as alleged in the Vivint Litigation, the Vivint Defendants aided, abetted, assisted, encouraged, or otherwise caused various former Vivint employees to work for Defendants and solicit a significant number of Vivint customers in direct violation of contractual obligations. This was done with the full knowledge, support, and encouragement of key executives at Defendants and Schanz.

43. As alleged by Vivint in its Complaint, the Vivint Defendants improperly obtained and/or retained copies of Vivint's confidential proprietary customer list and improperly used information on that list to target certain of Vivint's existing customers. These customer lists were obtained by employees of Vivint Defendants who previously worked for either Vivint or the companies who sold customer accounts to Vivint.

44. As alleged by Vivint in its Complaint, sales agents and other employees of Vivint Defendants solicited Vivint's customers' business and falsely represented to these customers,

without limitation, that 1) Vivint had gone out of business, was going out of business, or had filed for bankruptcy; 2) Vivint had sold or otherwise assigned its customer accounts to Vivint Defendants; 3) Vivint was unable to provide proper service or monitoring of its customer alarms; 4) Vivint Defendants had acquired or were otherwise "taking over" Vivint's customer accounts; 5) Vivint Defendants were affiliated with Vivint and providing technical "upgrades" or "updates" to existing customer hardware; 6) The representatives of Vivint Defendants were there on behalf of Vivint and/or worked for Vivint; 7) Vivint was a "scam" or "fraud"; 8) The customer's account was expired or expiring and the Vivint Defendant was going to take over; 9) Certain Vivint employees and/or sales agents had warrants out for their arrest.

45.     SARRG defended the Vivint Litigation under reservation of rights.

46.     At some point, Vivint Defendants elected to settle the Vivint litigation without SARRG's consent. SARRG remains unsure of the terms of the settlement agreement with Vivint.

*The SAFE litigation*

47.     On or about September 12, 2016, Security Alarm Financing Enterprises, L.P. ("SAFE") filed an Amended Complaint against several of the Defendants in a lawsuit that was pending in the United States District Court for the District of Alaska, Case No. 3:13-cv-00102-SLG before the Honorable Sharon Gleason. This litigation shall be referred to herein as the "SAFE Litigation."[2] Those of the Defendants named in the Safe Litigation shall be referred to as the SAFE Defendants.

---

[2] The Defendants named in the SAFE Litigation are Alder, APT, APT Alaska, and Alarm Alaska.

48. According to its Amended Complaint, SAFE is in the business of selling, installing, servicing and monitoring residential and commercial security alarm systems and primarily obtains customers for its services by purchasing customer accounts from other security alarm monitoring companies. SAFE was doing business in Alaska since 2012.

49. The Amended Complaint alleged six causes of action against SAFE Defendants. These included **1)** Violation of 15 U.S.C. §1125(a)(1) *et. seq.*(Lanham Act, false designation of origin claims); **2)** Unfair Competition under Alaska Statute §45.50.417; **3)** Misappropriation of Trade Secrets under Alaska Statute §45.50.940; **4)** Intentional Interference with Contract; **5)** Defamation *Per Se*; and **6)** *Defamation Per Quod*.

50. The SAFE Litigation arose out of various sales techniques and tactics of SAFE Defendants.

51. As alleged by SAFE in its Amended Complaint, SAFE Defendants improperly obtained and/or retained a copy of SAFE's confidential proprietary customer list and improperly used information on that list to target certain of SAFE's existing customers. These customer lists were obtained by employees of Defendant who previously worked for either SAFE or the companies who sold customer accounts to SAFE.

52. As alleged by SAFE in its Amended Complaint, sales agents and other employees of SAFE Defendants solicited SAFE customers' business and falsely represented to these customers, without limitation, that 1) SAFE had gone out of business, was going out of business, or had filed for bankruptcy; 2) SAFE had sold or otherwise assigned its customer accounts to Defendants; 3) SAFE was unable to provide proper service or monitoring of its customer alarms;

4) Defendants had acquired or were otherwise "taking over" SAFE's customer accounts; 5) Defendants were affiliated with SAFE and providing technical "upgrades" or "updates" to existing customer hardware.

53. SAFE's allegations and complaint was eventually tried to a jury in the United States District Court for the District of Alaska, the Hon. Sharon Gleason presiding. A jury returned its verdict on March 20, 2017 following an approximately two week trial.

54. The jury found, by special interrogatories, that APT, APT Alaska, and Alarm Alaska were "mere instrumentalities" of Alder under Alaska Law.

55. The jury further found that each of the SAFE Defendants committed false association which caused actual damages to SAFE, and awarded damages in the amount of $184,140.00 to SAFE.

56. The jury further found that SAFE Defendants engaged in unfair or deceptive trade acts or practices which caused actual damages to SAFE, and awarded damages in the amount of $276,210.00.

57. The jury also found that SAFE Defendants misappropriated SAFE's trade secrets which caused actual damages to SAFE, and awarded damages in the amount of $276,210.00.

58. The jury also found that SAFE Defendants committed Defamation against SAFE, and awarded damages in the amount of $184,140.00.

59. The total compensatory damages awarded by the jury totaled $920,700, although the Jury likewise deducted the sum of $49,500 from SAFE's damages for failure to mitigate some damages.

60.     The jury likewise found by clear and convincing evidence that SAFE was eligible for an award of punitive damages against SAFE Defendants with respect to its defamation of SAFE. The jury awarded total punitive damages of $2.00.

61.     The district court later awarded the sum of $634,116 in attorney fees and costs against SAFE Defendants in favor of SAFE.

62.     Plaintiff defended SAFE Defendants in the SAFE Litigation throughout the trial court phase under a reservation of rights.

63.     The acts of all Defendants that underly both the SAFE and the Vivint Litigation constitute or arose from one common corporate policy instituted by Defendants to pursue sales in a particular manner, through various misrepresentations, and through targeting existing customers of SAFE and Vivint identified through confidential proprietary lists obtained from former employees.

## CLAIM FOR RELIEF (DECLARATORY JUDGMENT)

64.     Plaintiff restates by this reference all preceding paragraphs.

65.     This Court, pursuant to 28 U.S.C. §2201 has the authority to issue declaratory judgments determining rights, status, and other legal relations within its jurisdiction.

66.     Under the terms of the Insurance Policies, Plaintiff is not required to indemnity Defendants of and from any damages, costs, or attorney fees arising out of or relating to either the Vivint Litigation or the SAFE Litigation, or the facts, circumstances, transactions, or occurrences that gave rise the Vivint Litigation and/or the SAFE Litigation.

67.     Specifically, with respect to Coverage B, Personal and Advertising Injury, the Exclusions

from coverage identified in Paragraph 16 above (in addition to any other in the Insurance Policies) operate to alleviate Plaintiff from any obligation of indemnity to Defendants with respect of and from any damages arising out of or relating to either the Vivint Litigation or the SAFE Litigation, or the facts, circumstances, transactions, or occurrences that gave rise the Vivint Litigation and/or the SAFE Litigation.

68. Additionally, damages relating to Misappropriation of Trade Secrets are not covered as a "Personal and Advertising Injury" as such damages do not fall under the definition of this injury as provided for in the Insurance Policies.

69. Specifically, with respect to Coverage D, Professional Liability, Plaintiff is not required to indemnify Defendants because the damages relating to the Vivint Litigation and the SAFE Litigation did not arise from "professional services" rendered for others by Defendants; to the contrary all acts or omissions of Defendants relating to the Vivint Litigation and the SAFE litigation related to selling technique and customer acquisition practices, and not services rendered for and on behalf of any person or entity other than Defendants.

70. Additionally and alternatively, with respect to Coverage D, Professional Liability, the Exclusions from coverage identified in Paragraph 22 above (in addition to any other in the Insurance Policies) operate to alleviate Plaintiff from any obligation of indemnity to Defendants with respect of and from any damages arising out of or relating to either the Vivint Litigation or the SAFE Litigation, or the facts, circumstances, transactions, or occurrences that gave rise the Vivint Litigation and/or the SAFE Litigation.

71. Further, Plaintiff is not required to indemnify Defendants for any injuries arising from or

relating to punitive damages, as these are specifically excluded under the terms of the Insurance Policy.

## REQUEST FOR RELIEF

72. Plaintiff therefore requests of this Court, a declaratory judgment that it is not obligated to compensate Defendants or indemnify Defendants of and from any cost or award of Damages arising from the Vivint Litigation or the SAFE Litigation.

73. Plaintiff further requests of this Court, a declaratory judgment that it is not obligated to cover any losses associated with the Vivint Litigation or the SAFE Litigation, or any claim based upon the facts, circumstances, transactions, and/or occurrence giving rise to the Vivint Litigation or the SAFE Litigation.

74. Plaintiff requests an award of its attorney fees and costs connected herewith as the prevailing party in this action and as may be consistent with any rule of law or agreement between the parties.

75. Plaintiff requests any further relief that the Court deems just and equitable.

DATED  this 15  day of October 2018.

**RENCHER ANJEWIERDEN**

/s/ Benjamin K. Lusty
Counsel for Plaintiff